WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-18-01695-002-TUC-JAS (EJM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Marcell Demetrius Gray, | |
| Defendant. | |

Pending before the Court is defendant Marcell Demetrius Gray's Motion to Dismiss Indictment for Outrageous Government Conduct. (Doc. 1123.) The defendant sets forth two reasons why the indictment should be dismissed: (1) the selective enforcement of the law against the defendant by encouraging, aiding, abetting, and inciting a confidential informant ("CI") to entrap Willie B. Smith into killing the defendant; and (2) the lead detective on the E.M. homicide tainted the investigation beyond rehabilitation such that any attempt to allow this prosecution to proceed against the defendant would be a due process violation. The defendant requests an evidentiary hearing to develop the record to support both arguments. For the reasons discussed below, the Court denies the request for an evidentiary hearing because the defendant has not made a *prima facie* case of outrageous government conduct and recommends that the District Court deny the instant motion.

## FACTUAL BACKGROUND

On April 6, 2022, a federal grand jury sitting in Tucson, Arizona, returned a Third Superseding Indictment against Marcell Demetrius Gray and eighteen other individuals.

(Doc. 1425.) The charged offenses pertain to an alleged criminal enterprise operated by a gang known as the Western Hills Bloods ("WHB"). The alleged criminal enterprise involved acts of violence and drug trafficking.

Gray is charged with the following offenses: (1) Count One charges Gray (and other co-defendants) with participating in a RICO conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963(a), the objects of which are: (a) acts involving murder (18 U.S.C. §§ 1959(b)(1) and 1961(1)); (b) offenses involving drug trafficking (21 U.S.C. §§ 846 and 841); and (c) acts involving the obstruction of justice (18 U.S.C. § 1512); (2) Count Two charges Gray (and other co-defendants) with Violent Crime in Aid of Racketeering – Conspiracy to Commit Murder, in violation of 18 U.S.C. § 1959(a)(5); (3) Counts Three and Eight charge Gray (and other co-defendants) with Violent Crime in Aid of Racketeering – Murder, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; (4) Count Four charges Gray (and other co-defendants) with Use of a Firearm During and in Relation to a Crime of Violence Resulting in Death, in violation of 18 U.S.C. §§ 924(j), 924(c)(1)(A)(i), (ii), (iii), and 2; (5) Count Seven charges Gray (and other co-defendants) with Accessory After the Fact, in violation of 18 U.S.C. §§ 2 and 3; (6) Count Nine charges Gray (and a co-defendant) with Use of a Firearm During and in Relation to a Crime of Violence Resulting in Death, in violation of 18 U.S.C. §§ 924(j), 924(c)(1)(A)(i), (ii), (iii), and 2; (7) Count Ten charges Gray with Possession of a Firearm and Ammunition by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (8) Count Eleven charges Gray (and a co-defendant) with Possession and Use of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2; (9) Count Twenty-four charges Gray (and other co-defendants) with Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846 and 841; (10) Count Twenty-five charges Gray (and other co-defendants) with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841; (11) Count Thirty charges Gray (and a co-defendant) with Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841; and (12) Count Thirty-one charges Gray (and a co-defendant) with Possession with Intent to Distribute

Cocaine, in violation of 21 U.S.C. § 841.

On February 18, 2022, the defendant filed a Motion to Dismiss Indictment for Outrageous Government Conduct. (Doc. 1123.) As noted above, the first allegation of outrageous government conduct is the encouraging, aiding, abetting, and inciting a confidential informant ("CI") to entrap Willie B. Smith into killing the defendant.[1] The defendant argues that "[p]rior to a complete, unbiased investigation into the murder of E.M., officers from the Arizona Department of Public Safety (DPS), **concluded** that Marcell D. Gray killed E.M., Willie B. Smith's brother, **and** conveyed this information unequivocally, at the very minimum, to the confidential informant (CI) Slim." [Bold in original.] *Id*. at 15-16. The defendant points out that Slim was receiving thousands of dollars in payment from the government for serving as a CI on an investigation called Operation Graceland. *Id*. at 16. The defendant alleges that during a recorded meeting between Smith and Slim in a vehicle, DPS got Smith's agreement to kill the defendant at the time, place, and manner suggested by Slim. *Id*. at 17. Officers allowed Smith to leave the meeting "distraught, high, and armed" and "waited **24 hours** for Smith to kill Mr. Gray before arresting Smith pursuant to a warrant[.]" [Bold in original.] *Id*. At oral argument, defense counsel pointed out that neither Smith nor Gray were under surveillance by law enforcement during the 24 hours between the meeting and Smith's arrest. This indifference to Gray's safety during that time period is the heart of the outrageous government conduct.

The second allegation of outrageous government conduct is that the lead detective on the E.M. homicide tainted the investigation beyond rehabilitation such that any attempt to allow this prosecution to proceed against the defendant would be a due process violation. The defense makes the sweeping allegation that Detective Barber, who is deceased, had a "personal vengeance to have Mr. Gray killed or locked away for life." *Id*. at 18. The defense then points to a litany of Detective Barber's errors or failures, many of which apparently surfaced during an Internal Affairs investigation, that demonstrate his vengeance. Specifically, Detective Barber: (1) did not preserve a 911 call related to the

---

[1] It is not clear how the alleged entrapment of Willie Smith is relevant to the defendant's charges, and the defendant has not explained the relevance.

murder; (2) failed to contact or identify C.M., a witness who called the deceased's sister and told her about the victim before anyone else; (3) failed to follow-up and clarify conflicting information of P.F., an eyewitness to the murder; (4) failed to do a summary of the interview of J.E. and did not place the audio of the interview in evidence; (5) failed to document or review the bus video of the homicide victim; (6) failed to provide documentation for the subjects in the lead sheet section of the case or the 88-Crime tip suspects; (7) failed to document suspect S.S.'s interview; (8) failed to document a supplement from an interview conducted with the deceased's sister; (9) failed to follow up on "NIBIN," when six cases were connected to the homicide; (10) failed to follow up from an 88-Crime tip of suspect A.S., who another detective identified as being involved in a murder at the hookah lounge; and (11) failed to follow up on suspect R.S. who E.M.'s family members said killed E.M.

## **DISCUSSION**

A court may dismiss a criminal indictment when government conduct is so outrageous that it violates due process. *United States v. Wiley*, 794 F.2d 514, 515 (9th Cir. 1986). Outrageous government conduct occurs when the actions of law enforcement officer or informants are "'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (quoting *United States v. Russell*, 411 U.S. 423, 431-432 (1973)). Dismissing an indictment for outrageous government conduct is "'limited to extreme cases' in which the defendant can demonstrate that the government's conduct 'violates fundamental fairness and is so grossly shocking and so outrageous as to violate the universal sense of justice.'" *Black*, 733 F.3d at 302 (quoting *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011)). "This is an 'extremely high standard.'" *Id.* (quoting *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993)).

Because the conduct must shock the conscience of the court, "outrageous government conduct is not to be equated with negligence or poor judgment." *United States*

*v. Wiley*, 794 F.2d at 515.  "The Government's involvement must be *malum in se* or amount to the engineering and direction of the criminal enterprise from start to finish." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991).  Moreover, "in order to secure dismissal of an indictment due to outrageous government conduct, a defendant must show a nexus between the conduct and either 'securing the indictment or [] procuring the conviction.'" *United States v. Dominguez-Caicedo*, 40 F.4th 938, 949 (9th Cir. 2022) (quoting *United States v. Nickerson*, 731 F.3d 1009, 1015 (9th Cir. 2013)).

"There is no bright line dictating when law enforcement conduct crosses the line between acceptable and outrageous, so 'every case must be resolved on its own particular facts.'" *Black*, 733 F.3d at 302 (internal quotation and citation omitted).  However, "[p]revious outrageous government conduct cases, viewed collectively, have identified various factors as relevant to whether the government's conduct was outrageous: (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue." *Black*, 733 F.3d at 303.

The Court first notes that many of the factors that the Ninth Circuit has identified as relevant to whether the government's conduct was outrageous do not apply to the case at hand because they involve the government's initiation or participation in the charged offenses.  Here, the government had no role in creating the charged crimes, did not encourage the defendant to commit the charged offenses, and did not participate in the offense conduct.  Law enforcement was investigating historical crimes believed to have been committed by the defendant and his co-defendants.  Thus, the factors discussed above do not support an argument that the government's conduct was outrageous.

The Ninth Circuit has concluded that the following law enforcement tactics were not outrageous: (1) use of false identities by undercover agents; (2) the supply of

contraband at issue in the offense; (3) the commission of equally serious offenses by an undercover agent as part of the investigation; (4) the introduction of drugs into a prison to identify a distribution network; (5) the assistance and encouragement of escape attempts; (6) the use of a heroin-using prostitute informant whose own activities were under investigation and who engaged in regular intercourse with the defendant; (7) encouraging 18-year-old patients in drug treatment centers to deal drugs; (8) videotaping a defendant while she was using a toilet in a holding cell at the police station; (9) the use of a reverse sting operation. *See Smith*, 924 F.2d at 889; *Nickerson*, 731 F.3d at 1014; *Black*, 733 F.3d at 310.   In fact, the Ninth Circuit has "dismissed an indictment due to outrageous government conduct in a published opinion only once[.]" *Dominguez-Caicedo*, 40 F.4th at 949 (citing *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971)).

In *Greene*, the government initiated contact with the defendant for the purpose of running an illegal bootlegging operation, supplied the equipment and raw materials for that operation, and was the defendant's sole customer for two-and-a-half years. 454 F.2d at 786-787.  The Ninth Circuit held that the government could not "involve itself so directly and continuously over such a long period of time in the creation and maintenance of criminal operations, and yet prosecute its collaborators." *Id*. at 787.[2]

The type of nexus in *Greene* between the allegedly outrageous conduct and securing the indictment is not present in the case at hand.  There is certainly no nexus between the government's failure to conduct immediate surveillance of Willie Smith or the defendant and securing the indictment.  In fact, there is no charged offense that is remotely related to the Willie Smith incident; it is completely irrelevant to the charged offenses.  Moreover, the Court notes that even if there was a nexus, the government's conduct in not surveilling Smith or Gray during this 24-hour period was, at most, negligent or showed poor judgment, and was not *malum in se*.

---

[2] The Court notes that the result in *Greene* was called into question by the Ninth Circuit in *Wiley*. In that case, the court pointed out that *Greene* "was decided prior to the Supreme Court's decision in *Russell*, which held that entrapment is not of constitutional dimension, leaving only the most shocking and extreme conduct, of undefined specificity, open to constitutional inquiry." *Wiley*, 794 F.2d at 517.

There is also no nexus between Detective Barber's alleged misdeeds and securing the indictment. Testimony at other motion hearings established that Detective Barber worked tangentially on this case (specifically, the E.M. homicide) until 2016 and was not working on the case for the two years prior to the indictment in 2018. Stated another way, he was a cog (and a small one at that) in the large law enforcement machine used to secure the indictment. Thus, his actions or inactions, in and of themselves, played no role in securing the indictment. Moreover, Detective Barber's alleged failures and errors go only to the E.M. homicide, which is the basis for only two of the twelve offenses charged against Gray. Thus, even if the requisite nexus was present for the alleged outrageous conduct and these charges, dismissal of the entire indictment would not be warranted.

Finally, as was the case with the Willie Smith incident, Detective Barber's alleged failures or errors do not amount to outrageous conduct, but rather, at most, reflect negligence and/or poor judgment. *See United States v. McClelland*, 72 F.3d 717, 721 (9th Cir. 1995) ("[A]llegedly poor police work hardly constitutes outrageous government conduct."). The defense can bring out Detective Barber's alleged shoddy police work at trial to show that the investigation was inadequate and/or there was a rush to judgment in charging the defendant with crimes. That is the remedy for poor police work, not dismissal of the indictment.

There is no need for an evidentiary hearing because the defense has not made a *prima facie* case that there is a nexus between the allegations of outrageous conduct and securing the indictment. For that reason, the Court recommends that the District Court deny the instant motion.

### **CONCLUSION**

For the reasons stated above, this Court recommends that the District Court deny the defendant's Motion to Dismiss Indictment for Outrageous Government Conduct (Doc. 1123).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after

being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR-18-01695-TUC-JAS**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 17th day of July, 2023.

Eric J. Markovich
United States Magistrate Judge